BARZILLAI BROWN, *in Equity, versus* CHARLES H. SNELL.

Where the right in equity to redeem mortgaged premises is attached and sold on execution, if the mortgage debt was paid before the sale, there being no mortgage subsisting, nothing passed by the sale.

If a mortgage be fraudulent, a creditor may levy on the land as unincumbered; but if he treat the mortgage as valid, sell the right of redemption and purchase it in, he cannot then claim that the mortgage be deemed void, and hold the land discharged from it.

Although the Court has, by statute, power "to hear and determine as a court of equity" "all suits for the redemption or foreclosure of mortgaged estates," its powers are limited and restricted to the modes of redemption prescribed by law, and, where a party fails to comply with the statute provisions, the Court can afford him no relief under its general powers as a court of equity.

BILL IN EQUITY.

THE plaintiff alleged that Thomas Snell, Oct. 8, 1851, was seized in fee of certain premises in Unity, and mortgaged them to D. L. Milliken for $2500, and, on Feb. 19, 1853, conveyed his interest in the premises to the respondent; that, on September 20, 1853, Milliken entered on the premises to foreclose the mortgage, and, on August 21, 1855, assigned his interest therein to the respondent, for a consideration expressed of $425,34; that, on March 29, 1852, the Waterville Bank attached Thomas Snell's interest in real estate in Waldo county, on a suit against him, on which judgment was rendered, March 29, 1855, and, after due proceedings, Thomas Snell's right in equity in the premises was sold on execution to D. H. Brown. May 17, 1856, D. H. Brown conveyed his right to the plaintiff. That the defendant has resided out of the State, and has had no agent or attorney in the State, since the plaintiff acquired title, and the plaintiff has had no opportunity to demand of him an account of the amount due under the mortgage. That the plaintiff had been informed and believed the mortgage to be fraudulent, and that but a small sum was due to Milliken from the mortgager when it was made, if any thing; that whatever indebtedness there was had been paid, in whole or in part, prior to the assignment; that the defendant paid for the mortgage only what was due Milliken, and knew all the circumstances and all the equities between the original parties; or, that the mortgage was made for the purpose of preventing attachments, with the knowledge of both parties, and was fraudulent and void. The plaintiff, therefore, being without remedy at law, filed this bill to obtain relief, and paid into Court $500, to be applied to redeem the mortgage or otherwise as the Court should order; and prayed that the mortgage might be declared satisfied or void, or the respondent ordered to release to the plaintiff, or enjoined from setting up title under the mortgage, as the facts may appear.

The defendant, in his answer, admitted the seizin of Thomas Snell, the mortgage, foreclosure and assignment; but de-

nied any knowledge of fraud in the transaction. He alleged that he paid Milliken about $420, for his interest in the note and mortgage, $2079,66 having been previously indorsed on the note as paid August 31, 1855; that the foreclosure was perfected September 30, 1856; that he had been in possession ever since, and that there was no longer any right of redemption.

The testimony on the part of the plaintiff was of great length, particularly that of D. L. Milliken, who explained the dealings between Snell and himself prior to the giving of the mortgage, and stated that the mortgage was given to secure him for his liability as indorser on a draft for $600, drawn by Snell on P. R. Southwick of Boston, then unpaid, and for balance due on account. On settlement of accounts, Aug. 31, 1855, he indorsed on Snell's note $2079,66, leaving unpaid only the balance found due on account. Milliken had paid the $600 draft, and charged it in his account with Snell before this settlement. He was unable to state the amount due from Snell, Oct. 8, 1851, but thought it was $1000 or $2000, exclusive of their dealings in hides. Charles H. Snell paid for the assignment $420,34.

The plaintiff testified to several conversations he had had with Thomas Snell, in which Snell told him the note and mortgage to Milliken were "bogus," and he was ashamed and sorry, and would endeavor to have it set straight. This the plaintiff said he had stated to the defendant, who replied, "I shall look out for that," or "take care of that."

*Rowe & Bartlett*, for the plaintiff.

The mortgage was fraudulent; it did not secure, nor purport to secure the actual indebtedness of Thomas Snell to Milliken. The note and mortgage were without consideration. Milliken could have indorsed it to a third party, and yet have collected of Snell the whole amount due from him on account, and what he had to pay on the $600 draft. The defendant took the note after its dishonor, with notice from Brown of the want of consideration. A bill in equity is the proper

remedy. 1 Sumn. 505; *Marston* v. *Brackett,* 9 N. H., 537. If the mortgage was valid, the debt was all paid before the assignment, and the plaintiff is entitled to a decree for a release. R. S., 1841, c. 125, § § 17, 18; 1857, c. 90, § 14. The plaintiff has done all in his power to ascertain the sum due. The absence of the defendant, without an agent in the State, prevented a demand on him to account. By paying to the clerk the sum due and more, the plaintiff has brought himself within the spirit of the statute. If not, it shows a *casus omissus* in the statute, and the Court can grant relief under its general equity powers. The statute on the redemption of mortgages is binding on the Court only in those cases where the mode of proceeding is prescribed. In cases where no mode is prescribed, a party is entitled to relief in the general course of equity proceedings. This case is within R. S., 1857, c. 90, § 15.

*A. W. Paine,* for the defendant.

1. The plaintiff does not bring himself within the statute. R. S., 1841, c. 125, and Act of amendment, § 23. Section 16 of c. 125 requires a previous tender by the mortgager, or a refusal or neglect to account by the mortgagee. Here has been no tender nor demand for an account. Section 19, as amended, applies only to a suit brought before entry to foreclose. The bill cannot, therefore, be maintained. *Putnam* v. *Putnam,* 13 Pick. 129. The deposit of money with the clerk is unauthorized by the statute, and can avail nothing.

2. If the deposit was authorized, it has only the effect of a tender before suit commenced. A tender must be unconditional. *Brown* v. *Gilmore,* 8 Greenl., 107. But in this case the money was deposited to be paid only on the order of Court. The condition was inconsistent with the rights of the defendant.

3. But if the bill can be sustained, what is the result? The plaintiff's title to the right of redemption is under the officer's sale on execution, May 17, 1856, of all the right the debtor had to redeem the mortgaged premises. If there was

no mortgage at that time, there was no equity of redemption, and nothing passed by the sale. If, as alleged, the mortgage was fraudulent, it was void; or, if paid, there was no mortgage.

4. The evidence adduced does not sustain the charge of fraud. But if there was fraud, the defendant cannot be affected by it. There is no evidence that he knew of any fraud. The declarations of Thomas Snell are not admissible to affect the mortgage in the hands of Milliken or his assignee. The defendant paid Milliken just what was due on the mortgage, $420,34.

5. The $420,34, paid by the defendant, August 31, 1855, with subsequent interest, $94,16, make $514,50. The deposit, if otherwise sufficient, is not enough to pay what is due.

6. The defendant, being in no fault, is entitled to costs. *Brown* v. *Littlefield,* 29 Maine, 302.

*In reply* to the plaintiff. The Court has no equity powers except those given by statute. Section 16 of c. 125 exactly meets the case of the plaintiff, except that he did not comply with the preliminary steps required. The defendant being out of the State does not affect the case. A tender or demand for account may as well be made out of as in the State.

The opinion of the Court was drawn up by

APPLETON, J.—The bill in this case alleges that Thomas Snell, on the 8th of October, 1851, mortgaged the premises sought to be redeemed to one Milliken, who having entered to foreclose, on the 21st of August, 1855, assigned his interest in the same to the respondent, describing him in the assignment as of Prescott, in the State of Wisconsin; that, on the 29th of March, 1855, the President, Directors & Co. of the Waterville Bank sued out a writ of attachment against said Thomas, on which his right to redeem was attached; that, having entered their action and obtained judgment therein, they caused his right to be seized and sold on execution, on the 24th of April, 1855, to one Daniel H. Brown, who conveyed his title, thus acquired, to the plaintiff.

The bill further alleges, that the mortgage was fraudulent; that the mortgage debt was paid before the pretended assignment to this defendant; that these facts were well known to him; that, at the time of the assignment, he was not a resident of this State; that he has not since been; that he has had no agent; and, that the plaintiff could neither make a demand upon the defendant to account, nor could he tender to him the amount due; and therefore that, being ready and offering to pay what might be due, he filed this bill, and deposited with the clerk the sum of five hundred dollars, subject to the order of the Court.

The prayer of the bill is for an account; for a decree determining whether any, and, if any, what sum is due, and that the plaintiff may redeem upon payment of what may be found due; or, if nothing be found due, or, if the mortgage be fraudulent, that defendant deliver up the mortgage to be cancelled, and be ordered to release all interest under the same to the plaintiff, and that he be perpetually enjoined from setting up the title thus acquired.

The answer admits the record title as stated in the bill; sets forth an entry to foreclose under the provision of R. S., c. 125, § 3, by entering peaceably, &c., in the presence of two witnesses, &c.; denies any knowledge or belief that the mortgage was fraudulent, or that the debt had been paid; and alleges that he was and is ready and willing to receive the amount deposited and give a release, but that, upon his tendering such release, he was refused the money, &c.

The plaintiff claims the mortgage debt was fully paid before the assignment thereof to the defendant, and, therefore, that he is entitled to a discharge of the mortgage and to a release. But, if so, the mortgage debt was paid before the attachment and sale of the equity of redemption. If so, there was no subsisting mortgage, consequently no equity. If no equity of redemption, then nothing passed by the sale, and the plaintiff has no other or greater rights than any other stranger to interfere.

If the mortgage was fraudulent, creditors might disregard

it, and levy upon the land as unencumbered. But if a creditor, regarding the mortgage as subsisting, choose to sell the equity and purchase it in, it is not for him, after treating it as valid, to claim that it be decreed as null and void, and to hold the land discharged therefrom, and thus acquire the fee at the price of the equity. *Bullard* v. *Hinckley*, 8 Greenl., 289 ; *Russell* v. *Dudley*, 3 Met., 147.

It remains to be seen whether, if the mortgage be regarded as outstanding, this bill can be maintained.

By R. S., 1841, c. 96, § 10, this Court has "power to hear and determine, as a Court of equity," "all suits for the redemption or foreclosure of mortgaged estates." The modes of foreclosure and the proceedings for redemption are prescribed by R. S., 1841, c. 125. The modes of redemption then established embrace all the authority conferred upon this Court in reference to this subject matter. It would be absurd to hold that the Legislature specially determined the proceedings to be had for the foreclosure and redemption of mortgaged estates, and yet by a general clause established not merely those thus designated, but the whole course of procedure as existing in a court of general equity jurisdiction. It has been repeatedly held that the powers of this Court are limited and restricted by the statute, under and through which alone it derives its authority in reference to the redemption of mortgages. "As to suits for redemption," remarks WHITMAN, C. J., in *Shaw* v. *Gray*, 23 Maine, 174, "the power delegated must have reference to the modes of proceeding particularly prescribed for the purpose." *French* v. *Sturtevant*, 8 Greenl. 246 ; *Chase* v. *Palmer*, 25 Maine, 341.

The plaintiff, therefore, to entitle himself to maintain his bill, must bring his case within the provisions of R. S., 1841, c. 125.

His case is not within section 16, because there has been no tender on the part of the mortgager, nor refusal on the part of the mortgagee to render an account upon request, nor any negligence nor delay in accounting.

The plaintiff does not bring himself within section 19, because the bill is brought *after* "an actual entry for breach of

the condition," when, by that section, it should be brought *before* such entry.

The amendment to section 19, R. S., 1841, p. 769, affords no aid to the plaintiff, because that is limited to a foreclosure without taking possession, according to the mode provided by c. 125, § 5.

This bill was commenced in 1856, and, therefore, the plaintiff cannot invoke the provisions of R. S., 1857, c. 90, § 15.

The plaintiff having failed to show a compliance with the provisions of R. S., c. 125, and this Court having limited jurisdiction, within which the plaintiff has not brought his case, the bill cannot be maintained.        *Bill dismissed.*—

*Costs for defendant.*

TENNEY, C. J., and CUTTING, MAY, DAVIS, and KENT, J. J., concurred.